IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WALLY A. MARTINEZ,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | **ORDER**<br><br><br><br>Case No. 2:05-CV-177<br><br>*Related Case*: 2:01-CR-564 |

This case is before the Court on Wally Martinez's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. For the following reasons, the motion is denied.

## BACKGROUND

On September 21, 2001, a robbery occurred at the Beehive Credit Union in Taylorsville, Utah.[1] There were two perpetrators: a man wearing a black bandana, a white button-down dress shirt, and a fishing cap, and a woman wearing large sunglasses, a blue hooded sweatshirt, and carrying a black purse. The woman handed the teller a note written on a floral note pad stating:

---

[1]The facts of the underlying case are set forth in detail in the Tenth Circuit's opinion in <u>United States v. Martinez</u>, 78 Fed. Appx. 697, 2003 WL 22376830 (10th Cir. 2003), and are repeated here as necessary to address the issues raised in Martinez's § 2255 motion.

"[T]his is a . . . robbery.  Put your money on the counter and don't say anything."  The teller complied with the demand and the perpetrators escaped in a white Pontiac Grand Am with approximately $2,552 in cash.

Later that day, the Federal Bureau of Investigation ("FBI") reviewed the surveillance photographs taken during the robbery.  Special Agent Juan Becerra identified the female perpetrator as Jamie A. Lucero ("Lucero").  Special Agent James Dempsey then sought additional information from local police, who had previously received information from a confidential informant, Greg Magalogo, indicating that Lucero had been planning to commit a series of robberies with an unidentified male accomplice.  At Dempsey's request, local police discussed the robbery with Magalogo, who identified the credit union robbery suspects as Lucero and a man named "Demon."

Upon receiving that information, agents responded to Lucero's last known address and arrested her.  Before taking Lucero into custody, agents inquired into her involvement in the credit union robbery and into the whereabouts of "Demon."  Lucero admitted that she had robbed the credit union with a man named Wally Martinez ("Martinez"), who is known in certain gang circles as "Demon."  Lucero explained that, prior to entering the credit union, Martinez pulled out a .22-caliber semi-automatic handgun and tucked it under his waistband.  She also said that she had told Martinez to fire the weapon "if anything happened" during the robbery.

During a subsequent consent search of Lucero's home, agents found items that appeared to be associated with the robbery such as a notepad with a consistent floral pattern, as well as

2

clothing items consistent with items worn during the robbery including a blue hooded sweatshirt, a white button-down dress shirt, a black purse, and a fishing cap.

Agents thereafter learned that Martinez was staying at a motel in West Valley City. At approximately 10:00 p.m., on the same day as the robbery, agents found Martinez at the motel, arrested him, took him into custody, and found $801 in cash on his person. When asked about the location of the gun described by Lucero, Martinez explained that the gun was in the trunk of his car (the white Pontiac Grand Am used in connection with the robbery, which actually belonged to Lucero). Agents searched the car where they discovered a black bandana, similar to the one described as being worn by the perpetrator, and a Ruger .22-caliber semi-automatic handgun.

Through further investigation, police concluded that Martinez had been involved in at least two prior armed robberies in West Valley City, Utah: one at a Payless Shoesource on July 12, 2001, and one at a Papa Johns Pizza store on August 5, 2001. According to eyewitnesses, both of those robberies had been committed by two men who used a gun to demand that employees hand over the contents of their cash registers. During a photo lineup arranged by the police, eyewitnesses in both robberies identified Martinez as one of the perpetrators.

Martinez was charged by superseding indictment with one count of bank robbery in violation of 18 U.S.C. § 2113(a); one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g); two counts of interference with commerce by threats of violence in violation of 18 U.S.C. § 1951(a); and three counts of possession of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). (Dkt. No. 46.) Prior to trial, Martinez filed a motion to sever

the charges relating to the Payless and Papa John's robberies from those relating to the credit union robbery, claiming unfair prejudice.  The Court denied Martinez's motion, concluding that the offenses charged were "of the same or similar character," and were properly joined.  (Dkt. No. 73.)

In a series of pre-trial discovery requests the defense asked the government to turn over "all investigative reports and other documents," "[a]ny and all 302 reports authored by FBI agents relating to any investigation in regard to charges filed," and "FBI Reports of Special Agent James Dempsey," relating to Martinez's prosecution.  The documents delivered by the government in response to these requests failed to include an FBI report by Special Agent Dempsey that requested authorization to pay confidential informant Magalogo $1000 for advising the police that "Demon" was Lucero's accomplice in the credit union robbery.  Because the prosecution, hoping to keep Magalogo's identity confidential, did not plan to call Magalogo as a witness at trial, it did not provide the defense with any information concerning Magalogo's involvement with the FBI's investigation.

Counsel for Martinez focused his defense with respect to the first two robberies on challenging the credibility of the photo identifications.  With regard to the credit union robbery, Martinez sought to focus his defense on the fact that the government's case ultimately rested on the credibility of Lucero, the cooperating co-defendant.

At trial, Lucero testified on cross-examination that the FBI agents who apprehended her had asked her about the whereabouts of "Demon" before she had made any reference to Martinez's participation in the robbery.  Defense counsel was surprised by this testimony

4

because he had apparently concluded, based on the pre-trial discovery, that Lucero was the

government's only source of information regarding the identity of her accomplice.  Accordingly,

defense counsel had assumed that it was Lucero, and not the agents, who made the first reference

to Martinez or "Demon" on the day she was arrested.  Not realizing that it was Magalogo who

told the FBI agents about "Demon" before they questioned Lucero, defense counsel believed he

had caught Lucero in a lie on the stand.  Hoping to use this testimony to his advantage, defense

counsel asked Lucero to repeat this point several times during cross examination.

During defense counsel's subsequent cross examination of Agent Dempsey, defense

counsel asked a series of questions attempting to show that the FBI's only information that

Martinez was Lucero's accomplice came from Lucero.  Specifically, defense counsel asked

whether anyone other than Lucero had identified Martinez on the day of the robbery.  At that

point, the prosecutor interrupted and asked for a sidebar conference.

During the conference, the prosecutor represented to the court that on the first day of trial

defense counsel had approached the agent and asked whether there was a confidential informant

in the case.  The case agent then approached the prosecutor to relay the question and, as a result

of that conversation, the prosecutor learned for the first time that an informant had given law

enforcement information about the case.  The prosecution claims it then immediately conveyed

this information to defense counsel.[2]  (Govt's Mem. in Opp. at 5.)  During the sidebar

---

[2]The government maintains that the disclosure of the confidential informant was made to
defense counsel on the first day of trial.  Martinez claims, however, that the disclosure was made
for the first time during the sidebar conference.  Although the parties dispute the precise timing
of the disclosure, the Court finds it is inconsequential for purposes of deciding Martinez's
motion.

conference, the court was informed of the disclosure that had only recently been made to defense counsel–that before arresting Lucero, agents knew that an informant had identified Lucero's accomplice as "Demon."  The court determined that, because the information had the potential to impact the credibility of the government's witness, in light of her testimony that the agents had mentioned "Demon" before Lucero had identified her accomplice, the information related to the informant was relevant.

Following the sidebar conference, defense counsel continued his cross-examination of Agent Dempsey and Dempsey identified the confidential informant as Magalogo.  When asked whether there were any FBI reports concerning Magalogo's involvement in the case, Dempsey indicated there were not.  However, Agent Dempsey later clarified this statement by acknowledging that although an investigative report was not prepared, a brief internal document was prepared to memorialize a payment made to Magalogo.  The internal document briefly explained that a named confidential informant had identified the male robbery suspect as "Demon," and had been paid $1,000 for his services.  This internal document had not been turned over as part of the discovery documents.

Defense counsel requested another sidebar conference and moved for a mistrial based on the prosecutor's failure to disclose this information in pre-trial discovery.  Defense counsel explained that he had been proceeding "on the theory that Ms. Lucero was the only one placing Mr. Martinez at [the credit union]" and argued that Martinez's case was irreparably damaged. The court acknowledged that the defense should have been told before trial that the FBI had someone in mind when they questioned Lucero, and that the FBI suggested a name to her,

6

because this information could be used by the defense to impeach Lucero's credibility. However, the court denied defense counsel's motion, reasoning that in a new trial, in order to use the exculpatory aspects of the new information to its advantage, the defense would still have to reveal the inculpatory fact that someone else had identified Martinez as one of the credit union perpetrators. The court also noted that the defense would have the opportunity to attempt to use the information to its advantage in the remainder of trial.

In further cross-examination of Special Agent Dempsey, the defense did attempt to challenge the identification of "Demon" using the disclosed information. When Lucero was later recalled as a witness, the defense had an opportunity to cross examine Lucero on this point as well but did not.

The following day, after the prosecution gave the defense the FBI report documenting Magalogo's payment, the defense again moved for a mistrial, arguing that the government's failure to disclose Magalogo's involvement prior to trial violated Martinez's rights under Brady v. Maryland, 373 U.S. 83 (1963). The court again denied the motion, concluding that, even though the prosecutor should have given the information to the defense before trial, its failure to do so was not significant in this case. The court noted that once the exculpatory nature of the evidence became apparent, the evidence was made available to defense counsel, who was then given an adequate opportunity to use that evidence to Martinez's advantage.

The court then ordered the prosecution to have Magalogo transported from prison, where he was then incarcertaed, to the courthouse so the defense could interview him. After Magalogo was brought in, the FBI also re-interviewed him, and in addition to identifying "Demon,"

Magalogo told them that he had also heard Martinez make an incriminating statement.  The

prosecution then called Magalogo as a rebuttal witness to testify to this statement.  The defense,

on cross-examination, suggested that Magalogo had a motive to incriminate Martinez falsely

because he and Martinez belonged to rival gangs.

       At the conclusion of the five-day trial, the jury found Martinez guilty of all seven counts

in the indictment.  (Dkt. No. 101.)  Martinez was sentenced to 780 months incarceration.  (Dkt.

No. 110.)

       Martinez filed a timely appeal in the United States Court of Appeals for the Tenth

Circuit.  United States v. Martinez, 2003 WL 22376830 (10th Cir. 2003) (unpublished).  The

Tenth Circuit affirmed Martinez's conviction finding: (1) the government's late disclosure of

information regarding the confidential informant and his identification of Martinez did not

warrant dismissal under Brady; (2) Martinez could not demonstrate prejudice, under Brady, from

the government's late disclosure of Magalogo's involvement in the investigation by claiming

unexpected discovery and presentation to the jury of new inculpatory evidence resulting from the

delayed disclosure; (3) the district court did not abuse its discretion in declining to grant

Martinez's motion for a mistrial as a discovery sanction for the government's failure to give

defense counsel the FBI report relating to Magalogo's involvement in the investigation; and (4)

the district court did not abuse its discretion in joining all three robbery charges in a single trial.

       On March 1, 2005, Martinez filed a motion to Vacate, Set Aside or Correct Sentence by a

Person in Federal Custody pursuant to 28 U.S.C. § 2255.  As grounds for his motion, Martinez

asserts ineffective assistance of both trial counsel and appellate counsel.  Additionally, Martinez

claims that the sentence he received is a violation of his Eighth Amendment right against cruel and unusual punishment.

### DISCUSSION

**1. Ineffective Assistance of Trial Counsel**

The Sixth Amendment guarantees criminal defendants the right to "reasonably effective" legal assistance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). An attorney's performance is ineffective if a habeas petitioner demonstrates: (1) that "counsel's representation fell below an objective standard of reasonableness"; and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 688. Courts conventionally describe the two prongs of the <u>Strickland</u> test as the "performance prong" and the "prejudice prong."

The "performance prong" requires a court to assess whether counsel's representation was constitutionally deficient. The Sixth Amendment, however, does not guarantee that a defendant receive either perfect representation or that his attorney's performance is error free. Thus, judicial scrutiny of whether an attorney's performance did in fact fall "below an objective standard of reasonableness" is not exacting. <u>Strickland</u>, 466 U.S. at 688. In this regard, <u>Strickland</u> observed:

> It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. at 689.  That an attorney's performance was effective therefore begins with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id.

The "prejudice prong" focuses exclusively on whether the outcome of the trial (or proceeding) would have been different but for the attorney's errors.  A petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.; see Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) ("[T]he 'prejudice' component ... focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.").  And, though this standard demands that a petitioner show more than "that the errors had some conceivable effect on the outcome of the proceeding," it does not require a showing that the error "more likely than not altered the outcome in the case."  Strickland, 446 U.S. at 693.

An ineffective assistance claim may be resolved on either performance or prejudice grounds alone."  United States v. Kennedy, 225 F.3d 1187, 1197 (10th Cir. 2000).  The § 2255 movant has the burden of proof to overcome the strong presumption that counsel provided effective assistance.  Id.

In this case, Martinez alleges that his trial counsel was constitutionally ineffective for the following reasons: (1) failure to perform a complete pretrial investigation; (2) failure to request a continuance of the trial once Magalogo's involvement was made known; (3) failure to effectively

advise Martinez during plea negotiations; and (4) failure to object to the jury selection system.

### A.  Failure to Perform A Complete Pretrial Investigation

Martinez alleges that his trial attorney failed to "investigate all witnesses who allegedly possessed knowledge concerning the guilt or innocence of Wally A. Martinez, and apparent[ly] fail[ed] to familiarize himself with all the police investigative reports."  (Pl.'s Mem. in Supp. at 14.)  Martinez claims that had trial counsel conducted a thorough investigation he could have formed "alternative defenses" and would have recognized alleged discrepancies between investigative reports.  Id.  Martinez also claims that trial counsel's failure to fully familiarize himself with all of the police reports deprived him of his right to impeach the testimony of Agent Dempsey and Magalogo.  (Pl.'s Mem. in Supp. at 15.)

The Sixth Amendment imposes on counsel a duty to investigate.  Strickland, 466 U.S. at 691.  The investigation need not be exhaustive, however, because the duty to investigate includes the duty "to make a reasonable decision that makes particular investigations unnecessary."  Id.  Applying these principles to this case, the Court concludes that trial counsel's investigation was sufficient to satisfy an objective standard of reasonableness.  Review of the docket reveals that trial counsel filed various pretrial motions, including a motion for disclosure of Jamie Lucero's psychological report and presentence report, which he thereafter received, and a motion to sever, which described each of the counts in the indictment.  Review of these motions demonstrates that counsel was familiar with the law enforcement reports and that he conducted a reasonably thorough pretrial investigation.  Moreover, trial counsel's cross-examinations of and attempts to impeach the governments' witnesses also demonstrates his clear understanding of, and

familiarity with the information in the law enforcement reports and indicates he had adequately prepared for trial.

Furthermore, even if Martinez could show that trial counsel should have conducted a more thorough investigation, he has not shown a reasonable probability that but for counsel's alleged deficiencies, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. The evidence against Martinez was extensive, including eye witness testimony, corroborative physical evidence, and the testimony of a co-defendant. For example, the co-defendant testified to the planning and execution of the credit union robbery and agents were able to corroborate her statements with physical evidence found both at her home and in Martinez's possession. Additionally, both the co-defendant's testimony and the physical evidence supported the identifications made by eyewitnesses. Given this evidence, the Court is confident that even if trial counsel had done as Martinez suggests, i.e, made greater efforts to impeach the government witnesses by pointing to discrepancies in police reports and questioning Lucero about her relationship with Acevedo, it is not probable that the result would have been different. <u>See</u> <u>United States v. Mimms</u>, Slip Copy, 2008 WL 718290 (D. Kan. March 14, 2008) (providing that conclusory and unsupported statements speculating that further investigation might have resulted in something useful is insufficient to show prejudice.) Accordingly, the Court concludes that Martinez has failed to carry his burden of overcoming the presumption of constitutionally acceptable performance with regard to this claim.

### B.  Failure to Request a Continuance

Martinez also claims that trial counsel was ineffective for failing to request a continuance

after learning that Magalogo had identified "Demon" as a suspect in the credit union robbery.

Martinez claims a continuance was necessary "to fully consider the potential impact of the

belated disclosure of . . . Magalogo's alleged identification of "Demon" as Lucero's accomplice .

. . and the adverse effect of such testimony on his theory of defense."  (Pl.'s Mem. in Supp. at

16.)  Martinez claims that "had defense counsel requested a continuance . . . there is a reasonable

probability that he would have avoided his line of questioning of witnesses at trial."  Id.

 Trial counsel's failure to request a continuance was not deficient conduct given the facts

of this case.  Although trial counsel was surprised to learn of the confidential informant, he was

thereafter provided with an adequate opportunity to both review the FBI report and interview the

confidential informant.  Additionally, based on the record at trial, it appears that even if counsel

had moved for a continuance it is unlikely he would have succeeded.  Upon learning about the

confidential informant's involvement in the case, trial counsel immediately moved for a mistrial

which the court denied.  The following day, trial counsel again moved for a mistrial, which the

court again denied.  The court explained that although the prosecutor should have given

information about the confidential informant to the defense before trial, its failure to do so was

not significant in this case.  The Court reasoned that once the exculpatory nature of the evidence

became apparent, the evidence was made available to defense counsel who was given an

adequate opportunity to use that evidence to Martinez's advantage.  United States v. Martinez,

78 Fed. Appx. 697 (10th Cir. 2003).  Given these facts, even if counsel had requested a

continuance, it is unlikely it would have been granted.  Where a motion for a continuance is

unlikely to be granted, failure to seek one cannot constitute ineffective assistance.  United States

v. Fish, 34 F.3d 448, 495 (7th Cir. 1994).

Moreover, Martinez has failed to show that he was prejudiced by trial counsel's failure to request a continuance. Although Martinez claims that with additional time trial counsel might have avoided the line of questioning that led to new inculpatory evidence, it is just as likely that with the additional time provided by a continuance the government would have benefitted in further developing the new inculpatory evidence. Accordingly, the Court is unable to conclude that had trial counsel requested a continuance, it is reasonably likely the outcome of the proceeding would have been different.

### C.  Failure to Effectively Negotiate During Plea Bargaining

Next, Martinez asserts that because his trial counsel failed to conduct a proper pretrial investigation he could not competently advise Martinez during plea negotiations. Martinez's claim in this regard is premised on his allegation that trial counsel's pretrial investigation was deficient. However, as discussed above, this Court has already concluded that trial counsel's pretrial preparation and investigation were reasonable and constitutionally sufficient. Additionally, Martinez's general allegations that trial counsel's deficient investigation rendered Martinez unable to make a "knowing and intelligent decision whether to ... accept the plea offer," are far too vague to provide sufficient grounds for relief, and fail to set forth what facts, legal or otherwise, were withheld from Martinez as a result of counsel's alleged ineffective assistance.

Moreover, Martinez's claim fails under Strickland's second prong as Martinez has failed to even allege there was a reasonable probability that he would have accepted the plea agreement

14

had counsel performed in constitutionally adequate manner.  See Requena v. Roberts, Slip Copy, 2007 WL 2460843 (D. Kan. Aug. 24, 2007) (providing that to prove prejudice resulting from ineffective assistance of counsel during plea negotiations defendant must, through objective evidence, prove there was a reasonable probability he would have accepted the plea agreement had counsel performed in a constitutionally adequate manner).

### D.  Failure to Object to the Jury Selection System

Martinez claims his trial counsel was ineffective for failing to challenge the jury selection system.  Specifically, Martinez claims his trial counsel should have objected to the jury selection system because it was based on voter registration lists which he asserts systematically exclude Hispanics.  (Pl.'s Mem. in Supp. at 19.)  "When, as here, the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue."  United States v. Orange, 447 F.3d 792, 797 (10th Cir. 2006).  "If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance."  Id.

The Sixth Amendment guarantees a defendant the right to a jury pool comprised of a fair cross-section of the community.  United States v. Ruiz-Castro, 92 F.3d 1519, 1527 (10th Cir. 1996).  A defendant does not, however, have a right to a jury of "any particular composition" and the jury actually chosen does not have to "mirror the community."  Taylor v. Louisiana, 419 U.S. 522, 538 (1975).  In order to establish a prima facie violation of the Sixth Amendment, Martinez must show: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that

15

this under-representation is due to systematic exclusion of the group in the jury-selection process.  Duren v. Missouri, 439 U.S. 357, 364 (1979)).

There is no dispute that Martinez satisfies the first requirement–that the group alleged to be excluded is a distinctive group in the community.  However, Martinez has failed to show that the representation of people of Hispanic origin in jury venires is not fair and reasonable in relation to the number of people of Hispanic origin in the community, or that people of Hispanic origin were systematically excluded from his venire.  Moreover, federal courts have historically upheld the use of voter registration lists to select jury venires, Ruiz-Castro, 92 F.3d at 1527, and the Tenth Circuit has reviewed jury selection systems similar to the system used in the Federal District of Utah and has concluded that these systems satisfy the requirements of the Sixth Amendment.  See, e.g., United States v. Gault, 141 F.3d 1399, 1403 (10th Cir. 1998) (affirming district court's conclusion that the Federal District of New Mexico's jury selection process using voter registration was constitutional); United States v. Chanthadara, 230 F.3d 1237, 1256-57 (10th Cir. 2000) (finding Federal District of Kansas' system, relying on actual voter lists, satisfied Sixth Amendment requirements); see also United States v. Davis, 939 F. Supp. 810 (D. Kan. 1996) ( "[T]he circuits are in complete agreement that not only is the use of actual voter lists proper, but that neither the Act nor the Constitution require that a supplemental source of names be added to voter lists simply because an identifiable group votes in proportion lower than the rest of the population.").  Finally, voter registration lists are the presumptive statutory source for potential jurors.  28 U.S.C. § 1863(b).

Therefore, because the Court finds Martinez's jury selection claim lacks merit, counsel

was not constitutionally ineffective for failing to raise the issue.

**2. Ineffective Assistance of Appellate Counsel**

Martinez alleges that his appellate counsel was ineffective because he failed to raise the issue of ineffective assistance of trial counsel on direct appeal.  Claims of ineffective assistance of counsel on direct appeal are considered under the same <u>Strickland</u> standard applicable to claims of ineffective assistance of trial counsel.  <u>United States v. Cook</u>, 45 F.3d 388, 392 (10th Cir. 1995).  When a habeas petitioner alleges that his counsel was ineffective for failing to raise an issue on appeal, the Court examines the merits of the omitted issue.  "If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.'" <u>Cook</u>, 45 F.3d at 392-93 (citation omitted).  Having previously concluded that Martinez's claims related to ineffective assistance of counsel in this § 2255 motion lack merit, the Court necessarily finds that Martinez's appellate counsel's failure to raise these issues on appeal was not deficient conduct.

Moreover, ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  <u>Massaro v. United States</u>, 538 U.S. 500, 503 (2003).  More specifically, the Tenth Circuit has held that, with rare exception, a defendant must raise ineffective assistance of counsel claims in a collateral proceeding, not on direct appeal.  <u>See</u> <u>United States v. Galloway</u>, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims . . . brought on direct appeal are presumptively dismissible, and virtually always will be dismissed.").  The Tenth Circuit has explained this procedure stating: "[W]e have

followed this practice even when the issues on direct appeal are sufficiently developed for us to pass judgment, reasoning that we benefit from the views of the district court regarding such claims." Id. Accordingly, appellate counsel cannot be found ineffective for failing to raise issues that should not have been raised in his direct appeal.

### 3. Cruel and Unusual Punishment

Martinez's final claim–that his Constitutional right against cruel and unusual punishment was violated by the sentence in this case–is procedurally barred because he failed to raise this issue in his direct appeal. It is well established that "[§] 2255 motions are not available to test the legality of matter which should have been raised on direct appeal." United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994). If an issue is not raised on direct appeal, the defendant "is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." United States v. Cox, 83 F.3d 336, 341 (10th Cir. 1996). Martinez has not established or even alleged cause which would excuse his failure to raise the eighth amendment issue on direct appeal and he has not shown that a fundamental miscarriage of justice will occur if the claim is not considered.[3]

### CONCLUSION

Martinez's claims of ineffective assistance of counsel fail to meet the standard

---

[3]Even if Martinez had alleged "cause" for his procedural default based on appellate counsel's failure to raise the issue on direct appeal, Martinez would not prevail. See United States v. Angelos, 433 F.3d 738 (10th Cir.), cert. denied, 127 S.Ct. 723 (2006) (discussing legislative intent of 18 U.S.C. § 924(c) and concluding that sentence of 55 years for consecutive 924 (c) convictions was not cruel and unusual punishment in violation of the Eighth Amendment).

established under <u>Strickland</u> and its progeny.  Martinez's claim that the sentence imposed in this case violates his Constitutional right against cruel and unusual punishment is procedurally barred.  Accordingly, the Court DENIES Martinez's § 2255 motion.

       Dated this 3rd day of June, 2008.

                                            _____
                                            Dee Benson
                                            United States District Judge