IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>WALLY MARTINEZ,<br><br>    Defendant. | **ORDER AND MEMORANDUM DECISION GRANTING MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)**<br><br>Case No. 2:01-cr-00564-TC<br><br>District Judge Tena Campbell |

Wally Martinez, who is serving a 65-year federal sentence for robbery and firearm crimes, has filed a motion under 18 U.S.C. § 3582(c)(1)(A)(i) asserting that there are extraordinary and compelling reasons for the court to reduce his sentence (ECF No. 191). The United States opposes the motion. (See Resp. in Opp'n, ECF No. 194.) The court did not set the motion for oral argument and has determined the motion "based upon the parties' written memoranda." DUCivR 7-1(g). After careful consideration of the parties' briefing, and for good cause appearing, the court grants Mr. Martinez's motion and orders him released from custody.

## BACKGROUND

The government charged Mr. Martinez with seven counts for his participation in three robberies that occurred in Salt Lake City between July and September 2001. Mr. Martinez was 22 and 23 years old at the time. (Presentence Report, ECF No. 196 at 2 (listing Mr. Martinez's date of birth as July 16, 1978).) On July 12, 2021, Mr. Martinez and Steven Evans robbed a Payless Shoeshource. (Id. ¶¶ 14–16.) The complainant told law enforcement that the two men entered the store and that Mr. Evans held a gun in her face while asking her to remove the video camera tape and open the cash register. (Id. ¶¶ 15–16.) Mr. Evans took $60 from the register. (Id. ¶ 16.) The complainant said that while Mr. Evans held the gun on her, Mr. Martinez "was

just standing there looking around." (Id.)  Mr. Evans and Mr. Martinez, together, also robbed a

Papa Johns Pizza on August 5, 2001.  (Id. ¶ 17.)  The complainant reported to law enforcement

that the two men told him they had come to pick up an order and that after entering the store, Mr.

Martinez pulled a gun from his waistband, and Mr. Evans took about $525 in cash from the

register.  (Id. ¶¶ 17, 27.)  Before leaving the Papa Johns, Mr. Martinez asked for the

complainant's wallet and additional money.  (Id. ¶ 17)  But Mr. Martinez and Mr. Evans left

after the complainant said that he did not have a wallet, and there was no other money in the

store.  (Id.)  The third robbery occurred on September 21, 2001, when Mr. Martinez and

codefendant Jamie Lucero entered a Beehive Credit Union, and Ms. Lucero gave a teller a note

saying: "This is a robbery.  Give me all your money.  No dye packs, no bags.  Put all the money

on the counter."  (Id. ¶ 18.)  Mr. Martinez and Ms. Lucero left the bank with $2,552 in cash.

(Id.)  No one was physically harmed during the robberies.  (See id. ¶¶ 23–26.)

Mr. Martinez's indictment alleged two counts of Hobbs Act robbery in violation of 18

U.S.C. § 1951(a), one count of bank robbery in violation of 18 U.S.C. § 2113(a), one count of

felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and three counts of felon in

possession of a firearm during and in relation to a crime of violence in violation of 18 U.S.C.

§ 924(c).  (Superseding Indictment, ECF No. 46; see also ECF No. 196 at 1.)  The government

offered Mr. Martinez a plea deal that, if accepted, would have resulted in the dismissal of two of

the three § 924(c) charges and a sentence of 14.6 years.  (See ECF No. 191 at 6.)  Mr. Martinez's

case proceeded to trial, and the jury found him guilty on all seven counts.  (Judgment, ECF No.

111 at 1.)  On September 24, 2002, the court sentenced Mr. Martinez to 65 years in prison,

followed by a 3-year term of supervised release.  (See id. at 1–2.)  Only 10 years of the 65-year

sentence are attributable to the robbery counts.  The majority of Mr. Martinez's sentence resulted

from the three 18 U.S.C. § 924(c) firearm charges; at sentencing, the court imposed a mandatory

minimum of 55 years for the 924(c) charges to run consecutively.  (See ECF No. 196 at 1.)  Mr.

Martinez has spent 22 years in custody, and his projected release date is 37 years away: February

25, 2061.[1]

## LEGAL STANDARD

Mr. Martinez brings his motion under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the

First Step Act.  See Pub. L. No. 115–391, 132 Stat. 5194, 5239, § 603(b) (Dec. 21, 2018).  The

First Step Act "allow[s] a defendant to directly file a motion for compassionate release with the

district court after exhausting administrative rights to appeal the Director of the BOP's failure to

file such a motion or the passage of 30 days from the defendant's unanswered request to the

warden for such relief."  United States v. McGee, 992 F.3d 1035, 1042 (10th Cir. 2021); see also

18 U.S.C. § 3582(c)(1)(A) (stating exhaustion requirement).

Once the court is satisfied that a defendant filing a compassionate release motion under

§ 3582(c)(1) has exhausted his administrative rights, the court proceeds to a three-step test to

determine whether to reduce the defendant's sentence and order his release.  See McGee, 992

F.3d at 1042.  The court may grant a motion for compassionate release only if it finds that three

requirements are met.  Id.  These are: "(1) … extraordinary and compelling reasons warrant such

a reduction [in sentence,] (2) … such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission[,] and (3) the district court considers the factors set forth

in § 3553(a), to the extent that they are applicable."  Id.  At step three, the court must "determine

whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole

---

[1] Available online at: https://www.bop.gov/inmateloc/.

or in part under the particular circumstances of the case." McGee, 992 F.3d at 1042 (citing

United States v. Jones, 980 F.3d 1098, 1107 (6th Cir. 2020)).

District courts "decide for themselves whether 'extraordinary and compelling reasons'

exist in a given case." Id. at 1045. But "this authority is effectively circumscribed by the …

requirement that a district court find that a reduction is consistent with applicable policy

statements issued by the Sentencing Commission." Id.; see also 28 U.S.C. § 994(t) ("The

Commission, in promulgating general policy statements regarding the sentencing modification

provisions in section 3582(c)(1)(A) … shall describe what should be considered extraordinary

and compelling reasons for sentence reduction, including the criteria to be applied and a list of

specific examples.").

The Sentencing Commission published new amendments to the sentencing guidelines

that went into effect on November 1, 2023, before Mr. Martinez filed his motion. The guidance

in its current form provides that "[e]xtraordinary and compelling reasons exist under any of the

following circumstances or a combination thereof:" (1) "Medical Circumstances of the

Defendant[,]" (2) "Age of the Defendant[,]" (3) "Family Circumstances of the Defendant[,]" and

(4) "Victim of Abuse." USSG § 1B1.13(b)(1)–(4). Relevant to Mr. Martinez's motion, the

guidance also includes a catchall category, which states: "(5) Other Reasons.—The defendant

presents any other circumstance or combination of circumstances that, when considered by

themselves or together with any of the reasons described in … (1) through (4), are similar in

gravity to those described in … (1) through (4)." USSG § 1B1.13(b)(5). Finally, the amended

guidance adds a new ground for relief, on which Mr. Martinez additionally relies:

> (6) Unusually Long Sentence.—If a defendant received an unusually long
> sentence and has served at least 10 years of the term of imprisonment, a change in
> the law (other than an amendment to the Guidelines Manual that has not been
> made retroactive) may be considered in determining whether the defendant

presents an extraordinary and compelling reason, but only where such change
would produce a gross disparity between the sentence being served and the
sentence likely to be imposed at the time the motion is filed, and after full
consideration of the defendant's individualized circumstances.

USSG § 1B1.13(b)(6).

## ANALYSIS

### I.      Exhaustion of Administrative Remedies

The court may not consider Mr. Martinez's motion without finding that he has exhausted

his administrative remedies.  Mr. Martinez contends that he has.  "Mr. Martinez, through

counsel, asked the Warden of USP Florence to move for a reduction in his sentence on

September 29, 2023."  (ECF No. 191 at 8.)  More than 30 days have passed since Mr. Martinez

made that request.  The United States does not dispute that Mr. Martinez exhausted.  (See ECF

No. 194.)  The court therefore finds that Mr. Martinez has exhausted his administrative remedies

as required by 18 U.S.C. § 3582(c)(1)(A).

### II.      Extraordinary and Compelling Circumstances

Mr. Martinez must demonstrate that there are "extraordinary and compelling reasons" to

reduce his sentence under § 3582(c)(1)(A)(i).  Mr. Martinez argues that two extraordinary and

compelling reasons entitle him to relief.  The first is set forth in USSG § 1B1.13(b)(6), which

states that non-retroactive changes in law that create a gross disparity between the sentence being

served and the sentence likely to be imposed at the time a motion is filed can warrant relief, so

long as the defendant has served at least 10 years of the sentence imposed and the court fully

considers the defendant's individualized circumstances.

The relevant non-retroactive change in law is 18 U.S.C. § 924(c), as modified by § 403(a)

of the First Step Act.  At the time of Mr. Martinez's convictions, 18 U.S.C. § 924(c) contained a

"stacking" provision that required a district court to impose consecutive 25-year sentences for

second and subsequent convictions of the statute that occurred simultaneously with a defendant's

first § 924(c) conviction.  Under the First Step Act, Congress eliminated the consecutive stacking

provision:

> [Before the First Step Act], one § 924(c) count carried a five-year minimum
> sentence that must be served consecutively.  An additional § 924(c) count
> required the district court to tack on another twenty-five years in prison, even
> though that gun possession occurred during the same course of conduct as the
> original count …
>
> The [First Step Act] clarified that § 924(c) counts can only be stacked if the
> second offense occurs after a final conviction on the first offense.  § 403(a), 132
> Stat. at 5221–22.  In other words, if sentenced today, a court would add only five
> years to [a defendant's] sentence … not thirty.

United States v. Maumau, No. 2:08-cr-00758, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020)

(citation omitted), aff'd, 993 F.3d 821 (10th Cir. 2021) (quoting United States v. Brown, 411 F.

Supp. 3d 446, 453 (S.D. Iowa 2019)).  In other words, "Congress [via the First Step Act]

changed the statute so that the 25-year mandatory sentence only applies if a person recidivates."

United States v. Evans, No. 2:01-cr-603, 2021 WL 1929798, at *2 (D. Utah May 13, 2021).

"Thus, a 25-year minimum mandatory sentence would not be applied to subsequent counts in the

same case, as it was in Defendant's case."  Id.  But the First Step Act's sentencing adjustments to

§ 924(c) were not made retroactive.  See 132 Stat. 5222 § 403(b) ("This section, and the

amendments made by this section, shall apply to any offense that was committed before the date

of enactment of this Act, if a sentence for the offense has not been imposed as of such date of

enactment.").

For possessing a gun during the robberies, Mr. Martinez was sentenced to five years in

prison for one violation of 18 U.S.C. § 924(c), 25 years for the second violation of § 924(c), and

25 years for the third violation of § 924(c), all to be served consecutively under the mandatory

minimums in place in 2002.  (See ECF No. 196 at 1 (listing mandatory minimums).)  If Mr.

6

Martinez were sentenced in December 2023, when he filed his motion, he would have likely

received a sentence of 15 years on the robbery and § 924(c) charges,[2] a sentence 50 years less

than what he originally received.[3]  This is a clear, gross disparity in Mr. Martinez's sentence

created by a non-retroactive change in law, and considered with Mr. Martinez's individualized

circumstances and the fact that he has served over 22 years towards his sentence, is an

extraordinary and compelling reason that warrants a sentence reduction.  See USSG §

1B1.13(b)(6).

The government argues that the Sentencing Commission lacked authority to declare that a

non-retroactive change in law that creates a gross disparity is an extraordinary and compelling

ground that justifies relief.  The court disagrees for three reasons.  First, Congress has explicitly

given the Sentencing Commission the authority to "describe what should be considered

---

[2] A violation of § 924(c) carries a mandatory minimum of five years.  See 18 U.S.C.
§ 924(c)(1)(A)(i).  For each § 924(c) violation, Mr. Martinez would be sentenced to five years, to
run consecutively, instead of 25 years on the second and third violations.  And the Supreme
Court has held that sentencing courts may consider the § 924(c) mandatory minimums when
calculating an appropriate sentence for the predicate offense.  Dean v. United States, 581 U.S.
62, 71 (2017).  This means that the court, considering the § 924(c) mandatory minimums, could
have imposed no time for the predicate offenses.

[3] At sentencing, the Honorable Dee Benson criticized the length of Mr. Martinez's sentence.  See
Angie Welling, U.S. judge questions sentencing mandates, Deseret News (Sept. 25, 2002),
https://www.deseret.com/2002/9/25/19679434/u-s-judge-questions-sentencing-mandates
(reporting that Judge Benson challenged the federal sentencing guidelines that would mandate
Mr. Martinez remain in custody until he is 89 years old: "At a time like this, I wonder how much
(Congress) thought this through … I admit the sentence is longer tha[n] I expected, and I
expected a long sentence.  This is longer than I would have thought was a good idea.").  While
sentencing judges are no longer required to impose sentences set by the sentencing guidelines,
see United States v. Booker, 543 U.S. 220, 227 (2005) (invalidating Sentencing Reform Act
provisions that make imposing sentences set by guidelines mandatory), the court notes Judge
Benson's concern because it sheds light on the appropriateness of Mr. Martinez's sentence.  But
his concern lacks bearing on whether the length of the sentence may now be grounds for
compassionate release.  See USSG § 1B1.13(b)(e) ("[A]n extraordinary and compelling reason
need not have been unforeseen at the time of sentencing in order to warrant a reduction … the
fact that an extraordinary and compelling reason reasonably could have been known or
anticipated by the sentencing court does not preclude consideration for a reduction[.]").

extraordinary and compelling reasons for sentence reduction" in "general policy statements[.]" 28 U.S.C. § 994(t).  Congress has also directed the Sentencing Commission to "promulgate and distribute … general policy statements regarding … sentence modification provisions."  28 U.S.C. § 994(a)(2)(C).  These congressional directives indicate that the Sentencing Commission possesses the authority to declare that a non-retroactive change in law that creates a gross disparity constitutes an extraordinary and compelling reason, even where Congress chooses to make the law non-retroactive.  Congress has not yet modified or disapproved the amendment by statute, suggesting its approval.  See 28 U.S.C. § 994(p) (stating that amendments to the guidelines go into effect unless "otherwise modified or disapproved by Act of Congress").  Nor did Congress repeal 18 U.S.C. § 3582(c)(1)(A)(i) by choosing to make the First Step Act non-retroactive.  A non-retroactive change in law may, in some instances, be an extraordinary and compelling circumstance justifying relief.

Second, the court finds it persuasive that in choosing to enact USSG § 1B1.13(b)(6), the Sentencing Commission "was influenced by the fact that on several occasions the Department of Justice successfully opposed Supreme Court review of [the circuit split over whether non-retroactive changes in law can be extraordinary and compelling reasons justifying relief] on the ground that [the issue] should be addressed first by the Commission."  See Sentencing Guidelines for U.S. Courts, 88 FR 28254-01, 2023 WL 3199918, at *28258 (May 3, 2023) (reviewing circuit split).  The government's position in this case contradicts its previous position that the circuit split should be resolved by the Sentencing Commission.  Indeed, in issuing this guidance, the Sentencing Commission opined on the circuit split because it "typically resolves such disagreements when they relate to its guidelines or policy statements[.]"  Id.

8

Third, in part based on the reasons mentioned above, federal courts have rejected the assertion that the Sentencing Commission lacked authority to enact USSG § 1B1.13(b)(6). See United States v. Padgett, Jr., No. 5:06cr13, 2024 WL 676767, at *1 (N.D. Fla. Jan. 30, 2024) (holding that the amendment is valid); United States v. Allen, No. 1:09-cr-320, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024) (concluding that the amendment was within the Sentencing Commission's power and presents no separation of powers issues); United States v. Brown, No. 2:95-cr-66(2), 2024 WL 409062, at *4–5 (S.D. Ohio Feb. 2, 2024) (same).

At least one district court has called the Sentencing Commission's authority to promulgate USSG § 1B1.13(b)(6) into question.  See United States v. Carter, No. 07-374-1, 2024 WL 136777, at *4 (E.D. Pa. Jan. 12, 2024).  The court, in reaching its conclusion, found that the amendment conflicted with binding circuit precedent.  See id. at *4–5 (holding that USSG § 1B1.13(b)(6) was "incompatible with Andrews' interpretation of the compassionate release statute"); see also United States v. Andrews, 12 F.4th 255, 261 (3rd Cir. 2021) ("[T]he imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence.") (quoting Maumau, 993 F.3d at 838 (Tymkovich, C.J., concurring)).  The court found that the Third Circuit's holding could not be overridden by the Sentencing Commission.  Carter, 2024 WL 136777 at *6.  The Tenth Circuit has not issued any similar decision.  See Maumau, 993 F.3d at 837 (affirming district court's decision to grant motion for compassionate release in part because of the length of the sentence imposed and the fact that Congress had subsequently reduced sentencing guidelines that apply to the same crimes); see also McGee 992 F.3d at 1047–48 (adopting Fourth Circuit's conclusion in United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020) that "it was permissible for district courts to treat as extraordinary and compelling reasons

9

for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act" (cleaned up)).  The fact that the Tenth Circuit issued these decisions before the Sentencing Commission enacted USSG § 1B1.13(b)(6) is irrelevant.

This court has also held that non-retroactive changes in law—usually in combination with other factors—can be extraordinary and compelling reasons justifying release.  See Maumau, 2020 WL 806121, at *7 ("[T]his court concludes that changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here."); Evans, 2021 WL 1929798, at *3 ("Defendant's stacked sentence more than doubled what his sentence would be today under the First Step Act's changes to § 924(c) … [t]his change in the potential sentences is extraordinary."); see also United States v. Tuakalau, 598 F. Supp. 3d 1222, 1226 (D. Utah 2022) ("Mr. Tuakalau took the plea deal against the backdrop of § 924(c) sentence stacking … he would have likely received much less time if sentenced today."); United States v. Nafkha, No. 2:95-cr-220-1, 2021 WL 83268, at *4 (D. Utah Jan. 8, 2021) (reviewing district court cases from throughout the country that have determined that some defendants with sentences based on § 924(c)'s former "stacking" regime have extraordinary and compelling reasons justifying their release).

The government does not deny that Mr. Martinez meets the criteria in USSG § 1B1.13(b)(6).  (See ECF No. 194.)  It argues only that the Sentencing Commission lacked the authority to promulgate the amendment.  But because enacting the amendment was within the Sentencing Commission's power, and Mr. Martinez satisfies the USSG § 1B1.13(b)(6) criteria, he is entitled to a sentence reduction.

Mr. Martinez additionally relies on the amendment's catchall category to argue that his

sentence should be reduced because of the combination of his young age at the time of the

offenses, his rehabilitation, and his struggles with addiction at the time of the offenses.  See

USSG § 1B1.13(b)(5) (providing that extraordinary and compelling reasons may exist where a

defendant presents any other circumstance or combination of circumstances similar in gravity to

those described in USSG § 1B1.13(b)(1)–(4)).

The court agrees that these factors together support a reduction in Mr. Martinez's

sentence.  Mr. Martinez was 22 and 23 years old when he committed the underlying crimes.

(See ECF No. 196 at 2–3; see ECF No. 111 at 1.)  Mr. Martinez, now 45 years old, has spent

nearly half his life behind bars.  Mr. Martinez's young age at the time he committed the offenses

is an important consideration, one that courts—including this court and the Tenth Circuit—have

frequently cited to support a finding of extraordinary and compelling reasons warranting relief.

See, e.g., Maumau, 2020 WL 806121, at *5, aff'd 993 F.3d at 837; Evans, 2021 WL 1929798, at

*3; Nafkha, 2021 WL 83268, at *5; Tuakalau, 598 F. Supp. 3d at 1225.

During his time in custody, Mr. Martinez has demonstrated strong rehabilitation.  He has

completed 500 hours of vocational training in the prison's barbershop and, as a result, acquired

his barber's license.  He has also held different prison jobs over the years.  Mr. Martinez has

engaged in over 30 prison-offered classes and programs to improve himself, including on

personal growth, overcoming drug addiction, and anger management.  (See Letter from Barbara

Garcia, Isaac Romero, Anthony Garcia, & Francisco Romero dated March 26, 2022, ECF No.

191-1.)  He has developed healthy hobbies like art, reading, and writing.  (See id. ("During

incarceration he has become an avid reader and writer.  His goal is to become an author.  He has

already drafted two children's books that encourage children to take pride in their cultural

11

ancestry."); see also Martinez Illustrations, ECF No. 191-7.)  He was selected to paint murals at three U.S. penitentiary facilities.  He has only had one prison disciplinary infraction in almost five years, which occurred nearly three years ago.  (See BOP Disciplinary Record, ECF No. 191-4 at 1); see Nafkha, 2021 WL 83268, at *1 (granting defendant's motion for compassionate release in part because though "prison disciplinary record list[ed] 34 offenses … [he] had not been cited for any offenses or prohibited acts in the last four years.").  Mr. Martinez has also been sober for the last five years.

Mr. Martinez additionally has a strong family support system and release plan.  The court received upwards of 20 letters of support from Mr. Martinez's family and friends, many of which highlight Mr. Martinez's rehabilitation efforts while in prison and mention the support Mr. Martinez is projected to have upon release.  (See Letters Supporting Mr. Martinez's Release, ECF No. 191-2).  Barbara Garcia, Mr. Martinez's mother and a state of Utah employee for 27 years, plans to house Mr. Martinez upon release.  (See ECF No. 191-1.)  She claims that her home "will provide a stable environment for Wally."  (Id.)  She also informs the court that Mr. Martinez "will receive post-correctional counseling and therapy[,] [which] will facilitate his transition and integration into the community[.]  In addition, he will enroll in writing workshops at Salt Lake Community College to improve his writing skills."  (Id.)  Mr. Martinez's brothers who live nearby, other relatives, friends, and his church community are also willing to help Mr. Martinez transition back into society.  (See ECF No. 191-2.)  Several individuals expressed interest in helping Mr. Martinez gain employment upon release.  (See id. at 15–18.)  Mr. Martinez, too, has written to the court and stated that since his incarceration, he has not stopped trying to better himself.  (See Letter from Mr. Martinez, ECF No. 191-6.)

The addiction Mr. Martinez struggled with at the time of the offenses, and his current

sobriety, are also important factors for the court to consider.  Mr. Martinez began using

substances at the age of nine years old.  (See ECF No. 196 at ¶ 101 ("At the age of nine, the

defendant reportedly began consuming alcohol socially.  Also at age nine, the defendant stated

that he tried marijuana.").  By age 13, Mr. Martinez had used cocaine and tried heroin and LSD.

(Id.)  Around the time Mr. Martinez committed the underlying crimes, he was using

methamphetamine and heroin.  (Id.)  Mr. Martinez admits that drugs have caused him trouble

over the years, but he "stopped using drugs almost five years ago." (ECF No. 191-6.)  Drug

addiction is very difficult to overcome, and the court commends Mr. Martinez for this

accomplishment.  Mr. Martinez's addiction at the time of the offenses, coupled with his current

sobriety, "most certainly move the needle toward a finding of compelling and extraordinary

circumstances." United States v. Avalos, No. 2:12-cr-246, 2021 WL 3617420, at *4 (D. Utah

Aug. 16, 2021) (commending the defendant's rehabilitative accomplishments).

The court finds that, taken together, Mr. Martinez's age at the time of the offenses, his

rehabilitation (including his achieved sobriety), and his struggles with addiction at the time of the

offenses constitute an extraordinary and compelling reason to reduce Mr. Martinez's sentence.

## III.   Sentencing Commission Policy Statement(s)

While district courts have "the authority to determine for themselves what constitutes

'extraordinary and compelling reasons,' … this authority is effectively circumscribed by the

second part of the statutory test, i.e., the requirement that a district court find that a reduction is

consistent with applicable policy statements issued by the Sentencing Commission[.]" McGee,

992 F.3d at 1045.  Having already taken the Sentencing Commission's current guidance into

account, the court finds that Mr. Martinez's circumstances satisfy Sentencing Commission policy

statements regarding when an extraordinary and compelling reason exists for a sentence reduction.

## IV.    Applicable Section 3553(a) Factors

In considering a motion for compassionate release, the court must finally "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant[,]" the purposes of sentencing, "the kinds of sentences available[,]" the sentences and ranges established by the sentencing guidelines, "pertinent policy statement[s] … issued by the Sentencing Commission … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[,] and … the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The purposes of sentencing are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2)(A)–(D).  The court acknowledges the seriousness of Mr. Martinez's crimes but concludes that a balance of the § 3553(a) factors weighs in favor of reducing Mr. Martinez's sentence to time served.

Mr. Martinez has been in custody for 22 years, and serving further time would not contribute to his rehabilitation.  While in custody, Mr. Martinez has matured; he has reflected on the seriousness of his offenses, expressed regret, worked to improve himself, and accepted

responsibility for his bad acts.  (See ECF No. 191-6.)  He has developed healthy habits and

achieved sobriety.  (See id.)  These factors, in addition to his support system and detailed release

plan (see BOP Release Plan, ECF No. 191-3) make it unlikely that Mr. Martinez will reoffend.

      The government argues that Mr. Martinez remains a danger to the public.  To support this

contention, the government cites his disciplinary record in prison (see ECF No. 191-4) and his

criminal history, including the 2001 robberies (see ECF No. 196 at ¶¶ 61–80, 82–86).  But as

discussed above, Mr. Martinez has had only one infraction in the last five years and has not

committed any offenses in nearly three years.  And the robberies occurred over 20 years ago.

While the court acknowledges the seriousness of the offenses and does not mitigate the

psychological harm experienced by two of the individual victims (see id. at ¶¶ 23–26 (including

victim impacts of crimes)), no one was physically harmed as a result of Mr. Martinez's conduct.

(See id.)  The government is correct that Mr. Martinez has a criminal history extending beyond

the three robberies.  But Mr. Martinez committed most of those crimes while he was a minor

struggling with addiction.  Though he was a legal adult when he committed the offenses in

question, he was in his early twenties (see id. at ¶¶ 82–86) and continuing to struggle with

addiction.  Given his current maturity and sobriety, the court does not view Mr. Martinez as a

current danger to the public.  And the court finds that the time Mr. Martinez has served has

adequately afforded deterrence to criminal conduct and protected the public from further crimes.

Notably, before Mr. Martinez went to trial, the government offered him a plea deal of 14.6 years

in prison.  The length of the deal suggests that the government viewed a sentence of 14.6 years as

sufficient for the purposes of § 3553(a).  Requiring Mr. Martinez to serve an additional 37 years

in custody for exercising his right to a jury trial would not be "just" punishment.

Additionally, Mr. Martinez's 65-year sentence contrasts markedly with the sentences received by Ms. Lucero and Mr. Evans.  Ms. Lucero, charged as Mr. Martinez's codefendant, pled guilty for her participation in the Beehive Credit Union robbery and was sentenced to 46 months in custody.  Though Mr. Martinez possessed the gun, the two defendants appeared to have played equal roles in the robbery.  (See ECF No. 196 at 7 ¶ 18.)  Mr. Martinez's conduct, even considering his charges on the first and second robberies, did not warrant a sentence more than 61 years longer than the one his codefendant received.

Because Mr. Evans agreed to a plea deal relating to charges for his participation in other robberies not involving Mr. Martinez, the government did not charge him as Mr. Martinez's codefendant in this case.  (ECF No. 191 at 5–6.)  For pleading guilty to two § 924(c) violations, Mr. Evans received a 32-year sentence.  Evans, 2021 WL 1929798, at *1.  Based on Mr. Evans's unusually long sentence under § 924(c)'s stacking regime, the disparity between that sentence and what his sentence would have been under the First Step Act's changes to the statute, his young age at the time of the offenses, abusive childhood, and medical risks, this court granted Mr. Evans's motion for compassionate release and reduced his sentence to 22 years.  Id. at *3–4.  Reducing Mr. Martinez's sentence to time served would reduce the sentencing disparity between him and Mr. Evans, who was found guilty of similar conduct.

Because a balance of the § 3553(a) factors favors Mr. Martinez, the sentence reduction authorized by his extraordinary and compelling situation is justified.  The interests of justice would not be served by prolonging Mr. Martinez's prison term.  Accordingly, the court finds that resentencing Mr. Martinez to time served is most consistent with § 3553(a).

## ORDER

For the reasons set forth above, the court GRANTS Mr. Martinez's motion (ECF No.

191) and reduces Mr. Martinez's sentence to credit for time served, effective March 15, 2024.

This release date will give the Bureau of Prisons and the United States Probation Office

sufficient time to organize Mr. Martinez's release.

The court maintains Mr. Martinez's original 36-month term of supervised release.  All

previously imposed standard and special conditions of supervision are reimposed.

DATED this 29th day of February, 2024.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge